FILED
CLERK, U.S. DISTRICT COURT

FILED

NOV - 7 2003

11-7-03

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

✓ **Priority**
✓ **Send**
   **Clsd**
✓ **Enter**
✓ **JS-5/JS-6**
   **JS-2/JS-3**
   **Scan Only**

SCANNED

ENTERED
CLERK, U.S. DISTRICT COURT

NOV - 7 2003

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BC-297521

RAY ANTHONY WILLIAMS,

                    Plaintiff,

        v.

UNIVERSAL PICTURES; et al.,

                    Defendants.

Case No. CV 03-05961 DDP (VBKx)

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS**

[Motion filed on 09/19/03]

        This matter comes before the Court on the plaintiff's motion to remand the action to state court.  After reviewing the materials submitted by the parties and hearing oral argument, the Court adopts the following Order.

I.    **Background**

        In January 1995, the plaintiff Ray Anthony Williams ("Williams") completed a film feature script that he had solely created and been writing since January 1991.  (First Amended Complaint ("FAC") ¶ 9.)  The script focused on the sport of street racing and the characters that are drawn to and participate in street racing.  (Id.)  Williams wrote the story based upon his own personal experiences and the experiences of his parents, both of

1 whom were street racers in the 1960's.  (Id.)  Williams wrote the
2 script hoping it would be made into a motion picture, and that he
3 would star in the motion picture.  (Id.)  On June 13, 2000,
4 Williams registered the script in his name under the title "BET"
5 with the Writers Guild of America.  (Id.)

6   In early 2000, Williams was employed as a courier.  (Id. ¶
7 10.)  As part of his route, Williams went regularly to the offices
8 of the defendant Universal Pictures ("Universal") in Universal
9 City, California, where he became acquainted with some Universal
10 employees, including an assistant editor named Brett Carroll
11 ("Carroll").  (Id.)  Williams allegedly described and "pitched" the
12 BET script to Carroll.  (Id.)  Williams alleges he also told
13 Carroll that he wanted to star in the motion picture, had acted
14 before, and was a member of the Screen Actors Guild.  (Id.)
15 Williams alleges that, in addition to the BET script, he "verbally
16 communicated other elements" to Carroll which elements constitute a
17 "work of authorship."  (Id. ¶ 29.)  Carroll allegedly told Williams
18 that he was interested in the BET script, and Carroll agreed to
19 review and consider it.  (Id. ¶ 10.)  At Carroll's invitation,
20 Williams gave Carroll a copy of the BET script.  (Id.)

21   About one week later, Carroll allegedly told Williams at
22 Universal's offices that he had read the BET script and wanted to
23 shop it around.  (Id.)  Additionally, Williams alleges that Carroll
24 told him that Carroll could get the script to the right people,
25 including, without limitation, people at Universal for
26 consideration as a motion picture.  (Id.)  Williams agreed that
27 Carroll could act on his behalf in this regard because he trusted
28

1 Carroll to protect the confidentiality of the script and his

2 interests.  (Id.)

3    Williams alleges that he reasonably believed that Carroll was

4 acting on behalf of and as an employee or authorized representative

5 of Universal when Carroll made the above representations and

6 commitments to Williams.  (Id. ¶ 11.)  Based on his conversations

7 with Carroll, Williams understood he was providing the BET script

8 to Universal for the script's consideration as a potential project.

9 (Id.)  Williams also alleges that he disclosed the BET script to

10 Carroll with the mutual understanding that he would be compensated

11 for its use or exploitation.  (Id. ¶ 35.)  However, Williams heard

12 nothing about the BET script after having submitted it to

13 Universal, and has not been compensated for its alleged use.  (Id.

14 ¶¶ 12, 37.)

15    In June 2001, a motion picture called "Fast and The Furious"

16 was released to the general public.  (Id. ¶ 13.)  The motion

17 picture was produced and distributed by the defendants, Universal

18 and Neal H. Moritz, Inc. ("Moritz").  (Id. ¶¶ 2-3.)  Carroll is

19 credited as a first assistant editor.  (Id. ¶ 19.)  According to

20 Williams, "Fast and The Furious" incorporates substantial elements

21 from the BET script.  For example, Williams alleges the motion

22 picture involves street racing and contains characters, plot

23 structure, and dialogue that are the same or similar to that

24 depicted in the BET script.  (Id. ¶¶ 14-15.)  Williams further

25 alleges that "Fast and The Furious" contains dialogue that appears

26 to be taken verbatim from BET.  (Id.)

27    On June 6, 2003, the defendants released a motion picture

28 entitled "2Fast 2Furious," which was advertised as a sequel to

3

1  "Fast and The Furious."  (Id. ¶ 17.)  Williams alleges that "2Fast

2  2Furious," like "Fast and The Furious," is substantially similar to

3  BET in plot, dialogue, story line and characters.  (Id.)

4      On June 16, 2003, Williams filed a lawsuit against the

5  defendants in state court.  On July 10, 2003, Williams filed a FAC

6  alleging claims for: (1) misappropriation of trade secrets,

7  California Civil Code § 3426.1; (2) violation of California Civil

8  Code § 980; (3) breach of implied-in-fact contract; (4) and (5)

9  unfair business practices, California Business and Professions Code

10 § 17200 et seq.; (6) declaratory relief; (7) an accounting; and (8)

11 injunctive relief.  The defendants removed the action to federal

12 court, arguing that Williams's claims are preempted by federal

13 copyright law.  Williams now moves to remand the action to state

14 court on the ground that this Court lacks subject matter

15 jurisdiction.  Williams also seeks reimbursement for attorney's

16 fees and costs incurred as a result of the removal.

17 **II.  Discussion**

18      A.  <u>The Plaintiff's Motion to Remand</u>

19          1.  <u>Legal Standard</u>

20      Title 28 U.S.C. § 1447(c)[1] gives a federal court authority to

21 remand a case to state court for lack of subject matter

22 jurisdiction.  Although the statutory language suggests that remand

23 is mandatory if the federal court finds that subject matter

24 jurisdiction is lacking, courts have held that "[i]t is generally

25 within a district court's discretion either to retain jurisdiction

26 _____

27      [1]  Title 28 U.S.C. § 1447(c) provides in relevant part that
   "[i]f at any time before final judgment it appears that the

28 district court lacks subject matter jurisdiction, the case shall be
   remanded."

1    to adjudicate the pendent state claims or to remand them to state

2    court." Harrell v. 20th Century Ins. Co., 934 F.2d 203, 205 (9th

3    Cir. 1991). A federal court "should consider and weigh in each

4    case, and at every stage of the litigation, the values of judicial

5    economy, convenience, fairness, and comity in order to decide

6    whether to exercise jurisdiction over a case brought in that court

7    involving pendent state-law claims." Carnegie-Mellon Univ. v.

8    Cohill, 484 U.S. 343, 350 (1988). When the balance of these

9    factors indicates that a case properly belongs in state court (as

10   when the federal law claims have dropped out of the lawsuit in its

11   early stages and only state law claims remain) the federal court

12   should decline to exercise jurisdiction. Id.

13             2.   Analysis

14        The well-pleaded complaint rule "precludes a defendant from

15   removing a complaint to federal court purely based on a federal

16   defense to the plaintiff's state law claims, 'even if the defense

17   is anticipated in the plaintiff's complaint, and even if both

18   parties concede that the federal defense is the only question truly

19   at issue.'" Firoozye v. Earthlink Network, 153 F. Supp. 2d 1115,

20   1119 (N.D. Cal. 2001) (quoting Caterpillar, Inc. v. Williams, 482

21   U.S. 386, 393 (1987)). The Supreme Court recognized that the rule

22   usually applies to a defense of preemption as well. Caterpillar,

23   482 U.S. at 393.

24        This rule does not apply, however, in cases of "complete"

25   federal preemption. See Franchise Tax Bd. v. Construction Laborers

26   Vacation Trust, 463 U.S. 1, 24 (1983). Under the complete

27   preemption doctrine, where the preemptive force of a statute is

28   "extraordinary," the presence of a preemption defense under that

                                5

statute converts "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987); <u>Caterpillar</u>, 482 U.S. at 393.[2]  Under such extraordinary statutes, a district court does "potentially possess subject matter jurisdiction over a removed complaint even where the federal question only arises in the context of a preemption defense." <u>Firoozye</u>, 153 F. Supp. 2d at 1120.  If any state-law claim is preempted, the court has subject matter jurisdiction over the complaint and may permit the plaintiff to convert the preempted state-law claim to a federal claim arising under the preemptive statute.  <u>Id.</u>

The Ninth Circuit established that a state-law cause of action is preempted by federal copyright law if (1) the work at issue comes within the subject matter of copyright; and (2) the state law rights asserted are equivalent to rights within the general scope of copyright protection. <u>Del Madera Props. v. Rhodes & Gardner, Inc.</u>, 820 F.2d 973, 976 (9th Cir. 1987) (overruled on other grounds); <u>see also</u> <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1213 (9th Cir. 1998); <u>Valente-Kritzer Video v. Pinckney</u>, 881 F.2d

---

[2]  The Supreme Court has recognized "complete preemption" in cases arising under ERISA, claims under the Labor Management Relations Act, and cases involving certain tribal claims.  14B Charles Alan Wright, et al., <u>Federal Practice & Procedure</u> § 3722.1 (3d ed. 1998).  Lower courts, however, have extended complete preemption analysis to copyright law.  <u>Id.</u>; <u>see e.g.</u>, <u>Rosciszewski v. Arete Assoc., Inc.</u>, 1 F.3d 225, 232 (4th Cir. 1993) (concluding from the broad language of § 301 of the Copyright Act and from its legislative history that Congress "clearly indicated that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law . . . should be litigated only as federal copyright claims."); <u>see also</u> <u>Firoozye</u>, 153 F. Supp. 2d 1115; <u>Dielsi v. Falk</u>, 916 F. Supp. 985 (C.D. Cal. 1996).

1  772, 776 (9th Cir. 1989); Dielsi, 916 F. Supp. at 991; Firoozye,

2  153 F. Supp. 2d at 1123-24.  Under this test, once it is determined

3  that the work at issue falls within the subject matter of

4  copyright, a court must analyze the elements of the state-law cause

5  of action to see if the right defined by state law may be abridged

6  by an act which, in and of itself, would infringe one of the

7  exclusive rights provided in § 106 of the Copyright Act.  Firoozye,

8  153 F. Supp. 2d at 1125.  In doing so, courts look for an "extra

9  element" that is required

10         in place of or in addition to the acts of reproduction,
           performance, distribution, or display in order to
11         constitute a state-law cause of action, and the "extra
           element" required by state law changes the nature of the
12         action so that it is qualitatively different from a
           copyright infringement claim.
13

14  Id.; see also Melville B. Nimmer & David Nimmer, 1 Nimmer on

15  Copyright, § 1.01[B][1] at 1-13 (2002) ("[I]f under state law the

16  act of reproduction, [etc.], will in itself infringe the state-

17  created right, then such right is pre-empted.  But if qualitatively

18  other elements are required, instead of, or in addition to, the

19  acts of reproduction, [etc.], . . . there is no pre-emption."

20  (emphasis in original; footnotes omitted)).[3]

21       Williams's original written film script, BET, is within the

22  scope of subject matter of copyright, as defined in § 102 of the

23  Copyright Act.  See 17 U.S.C. § 102 (the subject matter of

24  copyright encompasses "original works of authorship fixed in any

25  _____

26        [3]  The Court notes that this doctrine "creates results that
     may conflict with the federal concerns motivating copyright law."
27   Dielsi, 916 F. Supp. at 992 n.3.  The doctrine allows plaintiffs to
     avoid copyright preemption "even though the main focus of the
28   action will be on the nature of the author's rights and the extent
     to which the defendant violated them . . .."  Id.

7

1 tangible medium of expression," including literary works); <u>Worth v.</u>
2 <u>Universal Pictures, Inc.</u>, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997)
3 (finding movie screenplays are encompassed within federal
4 copyright); 1 <u>Nimmer</u> § 2.04[A] at 2-45.  Therefore, the Court turns
5 to the second prong of the test for preemption.  The defendants
6 contend that all of Williams's causes of action are preempted by
7 federal copyright law.  The Court addresses each cause of action in
8 turn.

9                  a.    <u>Misappropriation of Trade Secrets</u>

10      Williams alleges that he possessed a trade secret, i.e., the
11 BET script, and that he shared it with Universal on the condition
12 that Universal hold it in confidence.  (FAC ¶ 21.)  Williams
13 further alleges that Universal disclosed the BET script, and the
14 circumstances under which Universal obtained it, to the other
15 defendants without his consent in violation of California Civil
16 Code § 3426.1(b)(2).  (<u>Id.</u>)  Finally, Williams alleges that the
17 defendants to whom Universal disclosed the trade secret
18 misappropriated it through their acceptance and use of it in
19 violation of § 3426.1(b)(2)(B). (<u>Id.</u> ¶ 23.)

20      According to a leading treatise, "[a]ctions for disclosure and
21 exploitation of trade secrets require a status of secrecy, not
22 required for copyright, and hence, are not preempted."  1 Nimmer §
23 1.01(B)(1)(h) at 1-42.  If the state law does not require secrecy,
24 however, "the element distinguishing the state right from copyright
25 would appear to evaporate, causing the state right thereby to be
26 pre-empted."  <u>Id.</u>  Under California law, to qualify for trade
27 secret protection, information must derive its economic value "from
28 not being generally known to the public or to other persons who can

1 obtain economic value from its disclosure or use" and must be "the
2 subject of efforts that are reasonable under the circumstances to
3 maintain its secrecy."  Cal. Civil Code § 3426.1(d).

4      Because Williams alleges that Universal breached a duty to
5 keep the BET script confidential, an element not required for
6 copyright, the Court finds that the cause of action is
7 qualitatively different from a copyright infringement claim, and
8 therefore is not preempted.

9                    b.   <u>Violation of California Civil Code § 980</u>

10     Williams alleges:

11     In addition to the BET script, Plaintiff <u>verbally
       communicated other elements</u> the [sic] Mr. Carroll
12     which elements constitute a work of authorship as
       defined in [California] Civil Code § 980.  The
13     conduct of defendants identified above constituted a
       violation of plaintiff's rights under Civil Code §
14     980 because said defendants improperly took and used
       for profit significant and substantial portions of
15     the verbally communicated elements.

16 (FAC ¶¶ 29, 30 (emphasis added).)   Section 980(a)(1) provides in
17 relevant part:

18     The author of any original work of authorship that
       is not fixed in any tangible medium of expression
19     has an exclusive ownership in the representation or
       expression thereof as against all persons except one
20     who originally and independently creates the same or
       similar work.
21

22 Cal. Civil Code § 980(a)(1).  A reading of the FAC reveals that
23 Williams alleges that he communicated to Carroll elements other
24 than the BET script and that such elements constitute an original
25 work of authorship not fixed in any tangible medium of expression.
26 Because § 980(a)(1), unlike the Copyright Act, protects works of
27 authorship that are not fixed in any tangible medium of expression,
28 the Court finds that this cause of action relates to a work that

                                   9

1  falls outside the subject matter of copyright, and therefore is not

2  preempted by federal copyright law.  See Trenton v. Infinity Broad.

3  Corp., 865 F. Supp. 1416, 1427 (C.D. Cal. 1994) ("[T]he statute [§

4  980(a)(1)] steers clear of any legal or equitable rights created

5  under federal law, and thereby avoids federal preemption under 17

6  U.S.C. § 301(a)").

7        c. Breach of Implied-in-Fact Contract

8    Williams contends that an implied-in-fact contract existed

9  between him and Universal when Williams disclosed the BET script to

10  Carroll, because such disclosure was conditioned upon Universal's

11  agreement to pay Williams for the script's use or exploitation.

12  (FAC ¶¶ 10, 35.)  Williams contends that Universal breached this

13  implied contract by failing to compensate Williams and failing to

14  give him appropriate writer's credit for any production based on

15  his ideas.  (Id. ¶ 37.)  The defendants contend this claim is no

16  more than a claim for infringement of exclusive rights under the

17  Copyright Act, as the claim is based on the unauthorized copying

18  and use of the ideas in Williams's script.  (Opp. at 11-14.)

19    According to a leading treatise, the plaintiff's implied

20  contract claim should not be preempted because the implied promise

21  on the part of the defendants is an additional element beyond any

22  of the exclusive rights under copyright law.  4 Nimmer § 16.04[C]

23  at 16-25.[4]  However, the Ninth Circuit has not directly addressed

24  _____

25    [4] At least one court has disagreed with this reading of the
treatise.  See Endemol Entm't v. Twentieth Television Inc., 48

26  U.S.P.Q. 2d 1524, 1528 (C.D. Cal. 1998) (citing Nimmer for the
proposition that "implied contracts as a species of quasi contract

27  'should be regarded as an "equivalent right" and pre-empted'").
The Court believes that the Endemol court reached its conclusion

28  only by conflating quasi contract with implied-in-fact contracts, a
                   (continued...)

this issue and the district courts do not appear to be in complete
agreement.  This Court agrees with the reasoning of those district
courts that have found that a state-law claim for breach of an
implied contract is not preempted by the Copyright Act where the
plaintiff alleges that the defendants promised to pay for the use
of the plaintiff's work.  See, e.g., Groubert v. Spyglass Entm't
Group, No. CV 02-01803, 2002 U.S. Dist. LEXIS 17769, *10-13 (C.D.
Cal.); Firoozye, 153 F. Supp. 2d at 1126-27; Katz Dochermann &
Epstein, Inc. v. HBO, 1999 U.S. Dist. LEXIS 3971, *11 (S.D.N.Y.
1999).[5]

---

[4] (...continued)
distinction the treatise seeks to maintain.  See 1 Nimmer §
1.01[B][1][g] at 1-38 (claims for "unjust enrichment or quasi
contract" should be preempted (emphasis in original)); 4 Nimmer §
16.03 at 16-10 (quasi contracts are obligations created in by law
for reasons of justice; an implied in fact contract "on the other
hand is a consensual agreement presenting the same elements as are
found in an express contract except that in an implied in fact
contract the promise is not expressed in words but is rather
implied from the promisor's conduct."); 4 Nimmer § 16.04[C] at 16-
25 (contract claim should not be preempted because of the
additional element of "a promise (express or implied) upon the part
of the defendant." (emphasis added)); see also Firoozye, 153 F.
Supp. 2d at 1126-28 (finding that implied-in-fact contract claim
was not preempt but claim for unjust enrichment was: "an action
based on a contract implied in law [quasi contract] requires no
extra element in addition to an act of reproduction, performance,
distribution or display, whereas an action based on a contract
implied in fact requires the extra element of a promise to pay for
the use of the work which is implied from the conduct of the
parties." (quoting Wrench v. Taco Bell Corp., 256 F.3d 446, 458-59
(6th Cir. 2001)).

[5] One case has attempted to reconcile the conflicting cases
on the ground that preemption has been found where the case
involved the mere submission of the subject work or fruitless
negotiations.  Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't
Inc., 177 F. Supp. 2d 1050, 1059 (C.D. Cal. 2001) (Collins, J.).
According to this case, where the plaintiff has alleged that the
parties reached an actual agreement and that the relationship
continued after the agreement was reached, the "extra element"
requirement is met for an implied contract claim.  Id.  The instant
case appears to present a situation where the plaintiff alleges
(continued...)

1    Where a breach of implied contract claim merely asserts a

2 promise not to use the plaintiff's work without his permission,

3 that alone is not enough to be an "extra element" to overcome

4 preemption.  See Firoozye, 153 F. Supp. 2d at 1127.  However, as

5 the Firoozye court put it,

> A promise to pay for a work constitutes an extra element
> such that a breach of contract claim is not preempted by
> section 301.  "It is not the use of the work alone but
> the failure to pay for it that violates the contract and
> gives rise to the right to recover damages . . . .  The
> extra element is the promise to pay.  This extra element
> does change the nature of the action so that it is
> qualitatively different from a copyright infringement
> claim . . . ."

11 Id. (quoting Wrench, 256 F.3d at 456).

12    The required elements for a claim of breach of an implied

13 contract under California law are different from those required for

14 a claim of copyright infringement.  Williams has a burden "to prove

15 elements beyond unauthorized use, including that the defendant made

16 an enforceable promise to pay and breached that promise."  Id.  It

17 is "because many breach of contract claims allege that a defendant

18 breached a promise to pay the plaintiff for its use of the work,

19 'the vast majority of contract claims will presumably survive

20

21

---

22    [5]  (...continued)
that an agreement was reached.  (See FAC, ¶ 35 (indicating that the
23 specific terms of alleged implied agreement included compensation
and writer's credit)); cf. Worth v. Universal Pictures, Inc., 5 F.
24 Supp. 2d 816, 819 (C.D. Cal. 1997) (finding preemption where the
plaintiffs apparently had simply submitted scripts and later,
25 without any negotiations with studios, claimed that their idea for
a screenplay had been stolen and made into a movie); see also
26 Endemol, 48 U.S.P.Q. 2d at 1527 (Collins, J.) (limiting finding
that implied contract claim was preempted to the facts of the case,
27 as the relevant case law "illustrates that the ruling in these
cases[] can only be appreciated within the factual contexts of each
28 case").

1  scrutiny' under a section 301 preemption analysis."  <u>Id.</u> (citing 1

2  <u>Nimmer</u> § 1.01[B][1][a] at 1-22).

3      In the case at hand, Williams alleges the defendants impliedly

4  promised to compensate him for the use of his BET script.  (FAC ¶

5  35.)  His claim is not merely for the unauthorized use of his

6  copyrighted work, which would be exclusively actionable under § 106

7  of the Copyright Act, but also for a lack of compensation and

8  credit pursuant to an implied contract between the parties.  The

9  Court, therefore, finds that there is an "extra element" sufficient

10 to preclude preemption of the plaintiff's breach of implied

11 contract claim.

12              d.   <u>Unfair Competition Under California Law</u>

13     Williams alleges, in both his individual capacity (fourth

14 cause of action) and on behalf of the People of the State of

15 California (fifth cause of action), that the defendants violated

16 California Business & Professions Code § 17200 by receiving the

17 "benefits of monies unfairly and/or unlawfully obtained," and by

18 not properly giving him credit for significant portions of the

19 motions pictures.  (FAC ¶¶ 43, 44, 51.)  As a result, Williams

20 contends he has suffered, and will continue to suffer, substantial

21 economic harm unless the defendants properly give him full credit

22 for any parts of his work that were incorporated into the motion

23 pictures.  (<u>Id.</u> ¶ 44.)  He further alleges that, because he has not

24 been given proper credit, the movie-watching public is being

25 misled.  (<u>Id.</u> ¶ 51.)  The defendants argue that the plaintiff's

26 claim is based on the alleged violation of his rights protected

27 under copyright law and, therefore, is preempted.  (Opp. at 15.)

28

1      The Ninth Circuit has found preemption where an alleged

2 violation of § 17200 is premised upon the violation of exclusive

3 rights under the Copyright Act.  See, e.g., Kodadek, 152 F.3d at

4 1212-13.  In at least some cases where § 17200 is based on fraud or

5 misappropriation, however, courts have found no preemption by

6 copyright law because such claims come from acts beyond the scope

7 of copyright protection.  See, e.g., Summit Mach. Tool Mfg. Corp.

8 v. Victor CNC Sys., 7 F.3d 1434, 1441 (9th Cir. 1993) (finding

9 state unfair competition laws which seek to prevent reverse palming

10 off are not preempted by federal law); Shaw v. Lindheim, 919 F.2d

11 1353, 1364 (9th Cir. 1990) (no preemption where bodily

12 appropriation is shown); Salim v. Lee, 202 F. Supp. 2d 1122, 1127

13 (C.D. Cal. 2002) (unfair competition claim not preempted to the

14 extent it alleges reverse passing off under state law); Firoozye,

15 153 F. Supp. 2d at 1131 (denying defendants' motion to dismiss

16 unfair competition claim to the extent the claim relied on

17 misrepresentation and misappropriation of trade secret claims).

18      Here, if Williams had alleged unfair competition based solely

19 on violations of the exclusive rights provided in § 106 of the

20 Copyright Act, that claim would be preempted.  However, in his

21 unfair competition causes of action, Williams reiterates prior

22 paragraphs including those alleging misappropriation of trade

23 secrets by the defendants.  The Court finds that because the

24 plaintiff's claim for unfair competition is based on other claims

25 which, as stated above, are not preempted by copyright law, it

26 likewise is also not preempted.

27

28

14

1         e.     <u>Claims Six (Declaratory Relief), Seven (An</u>

2                <u>Accounting), and Eight (Injunctive Relief)</u>

3      The causes of action requesting declaratory relief, an

4 accounting, and an injunction request particular forms of relief

5 for the previous causes of action. Because claims six through

6 eight arise from claims that are not preempted, the Court finds

7 that claims six through eight also are not preempted.

8      B.    <u>The Plaintiff's Request for Attorney's Fees and Costs</u>

9      The Court denies the plaintiff's request for an award of

10 attorney's fees and costs incurred as a result of the removal.

11 **III. Conclusion**

12      Based on the foregoing, the Court grants the plaintiff's

13 motion to remand the entire action to state court, and denies the

14 plaintiff's request for an award of attorney's fees and costs.

15

16 IT IS SO ORDERED.

17

18

19 Dated:   11-6-03

20                              DEAN D. PREGERSON
                               United States District Judge

21

22

23

24

25

26

27

28